RECEIVED
IN LAKE CHARLES, LA.
JAN 03 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| INSURANCE SERVICES CONSTRUCTION CORP. | : | DOCKET NO. 2:10 CV 260 |
| VS. | : | JUDGE MINALDI |
| GEHEB PROPERTIES, LLC, et al. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment, filed by the defendants, Gary J. Geheb and Geheb Properties, LLC (collectively, "Geheb") [Doc. 44], a Cross-Motion for Summary Judgment, filed by the plaintiff, Insurance Services Construction Corporation ("ISC Services") [Doc. 46], and a Motion for Summary Judgment on all third-party claims [Doc. 30], filed by the third-party defendant, Certain Underwriters at Lloyd's, London ("Lloyd's, London").

Geheb has requested a hearing on its motion. After reviewing the memoranda filed in connection with the motion and the applicable law, the court finds that the motion can be resolved on the briefs. Accordingly, the request is denied.

## FACTS

On September 25, 2005, ISC Services entered into a contract with Geheb to repair damages to three buildings at the Chateau Lafitte Apartment complex, which Geheb owns, that were caused by Hurricane Rita.[1] The parties entered into various supplemental agreements

---

[1] Compl. ¶¶ 6&7; Compl. Ex. A, Work Authorization [Docs. 1 & 1-2].

1

thereafter, ultimately agreeing to a total contract price of $1,016,429.85.[2]

Geheb executed a Certificate of Satisfaction stating that ISC Services had satisfactorily completed the repairs on October 10, 2006.[3] ISC Services alleges, however, that Geheb only paid $907,100.97 of the contract price, leaving a balance of $109,329.06 unsatisfied.[4] ISC Services sent Geheb an invoice for remaining balance on August 22, 2007.[5] Geheb allegedly failed respond.[6] ISC Services then filed this lawsuit against Geheb on February 18, 2010, asserting breach of contract and seeking payment of the outstanding balance, along with costs and attorney fees.[7]

Geheb subsequently filed a Third Party Complaint [Doc. 18] against his insurer, Certain Underwriters at Lloyd's, London ("Lloyd's, London) on November 8, 2010. He seeks full contractual indemnity for any sum recovered by ISC Services on its breach of contract claim.[8] Lloyd's, London insured Geheb under a Commercial Package Policy, number GGAPKG2640, (the "Policy") effective October 22, 2004 to October 22, 2005.[9] The Policy provided both

---

[2] *Id.* ¶ 8.

[3] Compl. Ex. D, Certificate of Satisfaction [Doc. 1-5].

[4] Compl. ¶¶ 11 &12.

[5] ISC Services' Mot. for Summ J. Ex.E [Doc. 46-1].

[6] Compl. ¶ 12.

[7] Compl. ¶ 15.

[8] Am. Third Party Compl. ¶ IV [Doc. 56].

[9] Lloyd's London's Mot. for Summ. J. Ex. C, Commercial Package Policy number GGAPKG 2640 [Doc. 30-6].

Commercial Property and Commercial General Liability ("CGL") coverage.[10]

Geheb submitted a claim for the Hurricane Rita damages under the Commercial Property section of the Policy in 2005.[11] Lloyd's, London maintains that in 2006 and 2007, it issued a series of checks under the Policy jointly payable to Geheb Properties, LLC and MidSouth National Bank ("MidSouth"), the mortgage holder on the subject property.[12] Geheb alleges, however, that Lloyd's, London failed to advance funds for the payment of ISC Services' final invoice.[13] He further alleges that MidSouth received each of the payments made by Lloyd's, London and forwarded the proceeds directly to ISC Services without notifying him.[14] Thus, Geheb maintains that he did not discover Lloyd's, London's alleged failure to pay ISC Services' final invoice until ISC Services filed this lawsuit in February of 2010.[15]

## PRESENT MOTIONS

Geheb now moves for summary judgment dismissing ISC Service's claims against him as barred by the three-year prescriptive period applicable to actions on open account. In a Cross-Motion for Summary Judgment, ISC Services argues that the agreement between ISC Services and Geheb is a construction contract rather than an open account and seeks judgment as a matter of law that Geheb breached the contract by failing to pay the full contract price.

---

[10] *Id.*

[11] Statement of Uncontested Material Facts ¶ 8 [Doc. 30-2].

[12] Lloyd's, London's Mem. in Opp. to Geheb's Mot. to Am. Third Party Compl. 3 [Doc. 40].

[13] *See* Am. Third Party Compl. ¶¶ 8 & 9.

[14] Geheb's Mot. for Summ. J. Ex. G, Aff. of Gary J. Geheb 2 [Doc. 44-2]

[15] *Id.*

Additionally, Lloyd's, London moves for summary judgment dismissing Geheb's third-party complaint against it, contending that the insurance policy it issued to Geheb does not cover his claims.[16] Specifically, Lloyd's, London argues that Geheb's initial third party complaint asserted a claim under the CGL portion of the Policy, which, it argues, does not provide coverage for liability arising out of breach of contract.[17]

In response to Lloyd's, London's motion, Geheb amended his third party complaint to specifically allege that Lloyd's, London failed to pay sums it owed Geheb under the Commercial Property portion of the Policy.[18] Lloyd's, London, however, contends that any claim under that portion of the Policy is prescribed under La. Rev. Stat. § 22:1894.[19]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little*

---

[16] Lloyd's, London's Mot. for Summ. J. 1 [Doc. 30].

[17] Mem. in Supp. of Lloyd's, London's Mot. for Summ. J. at 5-9.

[18] *See* Am. Third Party Compl. ¶¶ 8&9.

[19] *Id.* at n.1.

v. *Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## ANALYSIS

### I. Prescription of ISC Service's Claims

The Louisiana Civil Code provides that personal actions, such as claims for breach of contract, have a prescriptive period of ten years. *See* La. Civ. Code Ann. art. 3499 (2011). Claims on an open account, on the other hand, are subject to a shorter three-year prescriptive period under La. Civ. Code Ann. art. 3494 (2011).

Geheb argues that ISC Services' claim, although styled as an action for breach of contract, is actually a suit on open account. Accordingly, he contends that because ISC Services filed its claim more than three years after MidSouth made its last payment on Geheb's behalf, the claim is prescribed under La. Civ.Code art. 3494.

The Louisiana open account statute defines the term "open account" to include "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La. Rev.Stat. Ann. § 9:2781 (2011). Although an open account need not involve

more than one transaction between the parties, *Frey Plumbing v. Foster,* 07-1091 (La. 2/26/08); 996 So. 2d 969, open accounts differ from ordinary contracts in that an open account generally entails an ongoing relationship during which one party extends a line of credit to another. *Cambridge Toxicology Group v. Exnicios,* 495 F.3d 169, 174 (5th Cir. 2007) (citing *Haynes v. Taylor,* 01-1430 (La.App. 3 Cir. 3/27/02); 812 So. 2d 874)); *see also Constr. Testing Labs, Inc. v. Wal-Mart Stores, Inc.,* 2009 U.S. Dist. LEXIS 63603 at *7 (W.D. La. July 23, 2003) ("whether a line of credit was extended serves as a key element in determining the existence of an open account."). Moreover, in an open account, unlike a in a contract, the total cost of the services to be rendered is usually left open and undetermined. *Mid-South Analytical Labs, Inc. v. Jones, Odom, Spruill & Davis, LLP,* 40,089 p. 14 (La. App. 2 Cir. 09/23/05); 912 So. 2d 101, 107. Thus, an open account, as its name indicates, is an account that is "open to future modification," *Tyler v. Hines,* 99-1921 p. 8 (La. App. 3 Cir. 5/03/00); 760 So. 2d 559, 563, one "that is left open for ongoing debit and credit entries . . . and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability," *Black's Law Dictionary* 20 (8th ed. 2004).

In the present case, the agreement between ISC Services and Geheb required ISC Services to perform a specific set of repairs for a specific price.[20] Though the parties amended it several times over the course of their dealings, the agreement never left the scope of work open or undetermined, and the price was always limited by the amount of insurance Geheb carried.[21] Moreover, while the agreement provided for payment in several "draws," it made the full

---

[20] Compl. Ex. D at p. 1, Scope of Work and Draw Schedule [Doc. 1-4].

[21] *See* Compl. Ex. E, Change Orders [Doc. 1-4]; *see also Kenner Industries, Inc. v. Sewell Plastics, Inc.,* 451 So. 2d 557, 560 (La. 1984) (holding that amendments to an ordinary construction contract did not transform the agreement into an open account).

contract price payable on completion of the work.[22] There is no evidence, therefore, that ISC Services intended to extend a line of credit to Geheb.

Thus, the court finds that the agreement between ISC Services and Geheb constituted an ordinary contract for services and not an open account and consequently that ISC Services' claim is a claim for breach of contract subject to the ten-year prescriptive period set forth in La. Civ. Code art. 3499. Because ISC Services filed its complaint well within the applicable ten-year period, its claim is not prescribed.

## II. ISC Services' Motion for Summary Judgment

In an action for breach of contract, the plaintiff must generally prove that the parties consented to be bound through offer and acceptance, La. Civ. Code Ann. art.1927 (2011); that the obligor failed to perform a conventional obligation, La. Civ. Code Ann. art.1994 (2011); and that the failure to perform resulted in damages to the obligee, *id. Garco, Inc. v. Rob's Cleaning & Powerwash, Inc.*, 08-1249, p.7 (La. App. 4 Cir. 2009); 12 So.3d 386, 391.

ISC Services has satisfied its initial burden of proving that it is entitled to summary judgment with respect to each element. It has produced the contract between the parties setting forth the price for the services to be provided and a Certificate of Satisfaction in which Geheb certified that ISC Services satisfactorily completed the repairs. Geheb has admitted that it never paid the final invoice and has failed to produce any evidence that ISC Services is not entitled to payment.[23] Therefore, the Court finds that Geheb has not established that any genuine issue of

---

[22] *See* Scope of Work and Draw Schedule.

[23] *See* ISC Services' Statement of Uncontested Material Facts ¶¶ 8 & 9; Fed. R. Civ. Proc. 56(e)(2); LR 56.2 (material facts in the moving party's statement are deemed admitted unless controverted by non-movant's statement); Geheb's Statement of Contested Material Facts [Doc. 52].

material fact exists as to ISC Services' breach of contract claim and that ISC Services is thus entitled to summary judgment as a matter of law on its claim for payment of the balance due.

ISC Services has not, however, proven its entitlement to costs and attorney fees. In Louisiana, a court generally may not award costs and attorney fees unless they are authorized by statute or provided for by contract. *Langley v. Petro Star Corp. of La.*, 01-0198 (La. 6/29/01), 792 So. 2d 721. Because ISC Services has not identified any statute or contract authorizing an award of costs or attorney fees in the present case, its motion for summary judgment will be denied with respect to its claim for such an award.

### III. Third Party Claims

Lloyd's, London asserts that Geheb's claim is untimely because Geheb filed his third-party demand after the contractually agreed upon deadline for bringing suit under the Policy. The Policy contains the following limitation provision for legal actions brought under the Policy's property coverage:

> **Legal Action Against Us**
> No one may bring legal action against us under this Coverage Part unless:
> a. There has been full compliance with all of the terms of this Coverage Part; and
> b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.[24]

The Louisiana Legislature extended the deadline for filing property insurance claims arising from Hurricane Rita to October 1, 2007. *See* La. Rev. Stat. 22:1984 (2011). Lloyd's, London argues that because Geheb did not file his third-party complaint until November 8, 2010, more than three years after the statutory deadline, the claim is prescribed.

Louisiana law suspends the running of prescription under the doctrine of *contra non valentem non currit praescriptio* "where the cause of action is not known or reasonably

---

[24] Lloyd's, London's Mot. for Summ. J. Ex. D, at 40, Commercial Package Policy [Doc. 30-6].

knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Carter v. Haygood*, 892 So. 2d 1261, pp. 11-12 (La. 1/19/05); 892 So. 2d 1261, 1268. Geheb did not address Lloyd's, London's prescription argument in his Opposition, but in a memorandum in support of his Motion for Leave to File an Amended Third-Party Complaint, he argued that under the doctrine of contra non valentum, prescription did not begin to run until he learned that Lloyd's, London did not advance funds to pay ISC Services' final invoice.[25]

Louisiana courts are clear that "[m]ere unawareness of a potential cause of action is not enough to invoke *contra non valentum*." *Bell v. Kreider*, 858 So. 2d 58 (La. App. 5 Cir. 9/16/03); 858 So. 2d 58, 62. Rather, plaintiffs "'will be deemed to know that which [they] could have learned from reasonable diligence.'" *Id.* (quoting *Hospital Serv. Dist. No. 1 of Jefferson Parish v. Alas*, 657 So. 2d 1378, 1383 (La. App. 5 Cir. 6/28/95)). Where, as here, prescription is evident on the face of the pleadings, the burden falls to the plaintiff asserting the suspension of prescription to "show that he did not know or discover such facts, and that the lack of knowledge is not attributable to his fault." *Bell*, 858 So. 2d at 62 (internal quotation omitted).

The court finds that there is at least a genuine issue of material fact as to whether Geheb knew or should have known that Lloyd's, London had denied payment of ISC Services' final invoice. In his affidavit, Geheb indicated that Lloyd's, London's agent, Superior Claims Services, paid all claims directly to MidSouth, which then forwarded the funds to ISC Services without notifying Geheb.[26] He further maintains that he never received any notice from Lloyd's,

---

[25] *See* Geheb's Reply in Response to Lloyd's, London's Opposition to Geheb's Motion for Leave to File an Amended Third Party Complaint 2 [Doc. 41]

[26] Geheb's Mot. for Summ. J. Ex. G, Aff. of Gary J. Geheb [Doc. 44-2].

9

London that it had denied any portion of his property damage claim, nor did ISC Services notify him that the invoice had not been paid before filing suit.[27]

Because Geheb apparently never received any indication that Lloyd's, London had denied any portion of his claim, the court cannot find as a matter of law that he reasonably should have known that ISC Services had not been paid before it filed its complaint on February 18, 2010. *See Clayton Timber Company, Inc. v. Butler Ins. and Real Estate Inc.*, 29,194 (La. App. 2 Cir. 02/26/97); 690 So. 2d 940 (insured was reasonably unaware of his insurer's failure to defend a lawsuit filed against him where the insurer did not notify him that it had denied his timely filed claim for defense and indemnity). Geheb filed his third-party complaint within two years of that date. Accordingly, Lloyd's, London's Motion for Summary Judgment will be denied.

## CONCLUSION

For the foregoing reasons, ISC Services' Motion for Summary Judgment will be granted in part and denied in part. Specifically, ISC Services will be granted its request for summary judgment against Geheb in the amount of $ 109,329.06, plus judicial interest, but denied its request for summary judgment on the issue of attorney's fees and costs. The Motions for Summary Judgment filed by Geheb and Lloyd's, London will be denied.

Lake Charles, Louisiana, this __3__ day of _____, 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[27] *Id.*